```
                    UNITED STATES DISTRICT COURT
                       DISTRICT OF NEW JERSEY
```

```
EVELYN CRUZ,                    :    Civil No. 12-5143 (JEI/AMD)
                                :
         Plaintiff,             :
                                :              OPINION
         v.                     :
                                :
ATCO RACEWAY, INC.,             :
                                :
         Defendant.             :
```

**APPEARANCES**:

MORELLI RATNER PC
By: David T. Sirotkin, Esq.
950 Third Avenue
New York, New York 10022
        Counsel for Plaintiff

SALMON, RICCHEZZA, SINGER & TURCHI, LLP
By: Timothy J. Schipske, Esq.
Tower Commons
123 Egg Harbor Road, Suite 406
Sewell, New Jersey 08080
        Counsel for Defendant


**IRENAS,** Senior United States District Judge:

     This wrongful death / negligence suit arises out of a fiery car crash that occurred at the drag racing strip owned by Defendant Atco Raceway, Inc. The decedent, Jose Cruz, was severely burned after his racecar crashed into a wall. Although Cruz was able to escape the car and walk away from the crash, he ultimately died.

Atco Raceway presently moves to dismiss the Complaint for failure to state a claim, and for summary judgment. Plaintiff, Evelyn Cruz (Jose Cruz's widow and administratrix of Jose's estate), opposes the Motion, and also moves to amend the Complaint. For the reasons stated herein, Atco Raceway's Motion will be denied and Evelyn Cruz's Motion will be granted.[1]

**I.**

The crash occurred in the afternoon of September 15, 2010. On that day, Jose Cruz and others were using the quarter-mile drag strip at Atco Raceway for "timed runs." (E. Cruz Aff. ¶ 4; Sirotkin Aff. Ex. 10) During Jose Cruz's fifth solo run down the strip, the engine of Cruz's 1986 Chevrolet Monte Carlo race car "suffered a catastrophic engine failure." (Sirotkin Aff. Ex. 10 – police report) "[Cruz's] vehicle burst into flames, and sustained several impacts with the concrete barrier[s] before coming to final rest [past the finish line] fully engulfed with fire." (Id.)

Just after the crash, the ambulance located near the starting line would not immediately start. (E. Cruz Aff. ¶ 7; Joseph Cruz Aff. ¶ 6) Even Atco Raceway's EMT, Richard Gardner, who drove the ambulance, states, "I turned the ignition over in the diesel ambulance, awaited the glow plugs to heat up, started the ambulance,

---

[1] The Court exercises diversity jurisdiction pursuant to 28 U.S.C. § 1332. The parties are completely diverse and the amount in controversy exceeds the statutory minimum.

and then proceeded . . . to the scene [of the crash]." (Gardner Aff. ¶ 7)[2] By the time the ambulance arrived at the crash,[3] Jose Cruz was already out of the car but severely burned.

After receiving emergency medical treatment from Waterford Township EMTs, Jose Cruz was transported by helicopter to Cooper Hospital. Jose Cruz "suffered in the hospital for approximately 10 months" (E. Cruz. Aff. ¶ 15)[4], before dying on July 12, 2011.

The parties dispute whether, on the day of the crash, Jose Cruz signed Atco Raceway's standard "Release and Waiver of Liability, Assumption of Risk and Indemnity Agreement." (Sirotkin Aff. Ex. 11; B. Swierczynski Aff. Ex. B) They also dispute whether Atco Raceway inspected Jose Cruz's vehicle prior to racing.

The original Complaint asserts negligence and wrongful death claims, and seeks punitive damages against Atco Raceway. The Proposed Amended Complaint seeks to add a survivorship claim and a negligence *per se* claim based on violations of New Jersey Motor Vehicle Racetrack Regulations. It also includes more detailed

---

[2] The proposed Amended Complaint alleges that "[t]he ambulance was a converted older model vehicle with a diesel engine. Atco knew that unless the ambulance had been running recently, the engine would not start until its glow plugs heated." (Prop. Amend. Compl. ¶ 14)

[3] The video surveillance recording of the drag strip purportedly shows the ambulance arriving approximately 43 seconds after the crash. (J. Swierczynski, Sr. Aff. ¶ 23) However, Plaintiff disputes the authenticity of the recording. *See infra* n. 12.

[4] The Proposed Amended Complaint alleges that both of Jose Cruz's legs were amputated. (Prop. Amend. Compl. ¶ 27)

3

factual allegations supporting, and elaborating on, Plaintiff's theories of negligence.[5]

As stated previously, Atco Raceway moves to dismiss and for summary judgment, and Evelyn Cruz moves to amend the Complaint.

**II.**

**A.**

Federal Rule of Civil Procedure 12(b)(6) provides that a court may dismiss a complaint "for failure to state a claim upon which relief can be granted." In order to survive a motion to dismiss, a complaint must allege facts that raise a right to relief above the speculative level. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also* Fed. R. Civ. P. 8(a)(2). While a court must accept as true all factual allegations in the plaintiff's complaint, and view them in the light most favorable to the plaintiff, *Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008), a court is not required to accept sweeping legal conclusions cast in the form of factual allegations, unwarranted inferences, or unsupported conclusions. *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997). The complaint must state sufficient facts to show that the legal allegations are not simply possible, but plausible. *Phillips*, 515 F.3d at 234. "A claim has facial plausibility when the

---

[5] The Proposed Amended Complaint also seeks to eliminate as a Defendant the National Hot Rod Association which was previously dismissed from this suit pursuant to the parties' stipulation. Atco Raceway does not oppose this aspect of Plaintiff's Motion to Amend.

plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

"[I]f a complaint is subject to a Rule 12(b)(6) dismissal, a district court *must* permit a curative amendment unless such an amendment would be inequitable or futile." *Great Western Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 174 (3d Cir. 2010) (internal citation and quotation omitted; emphasis added). Stated another way, "[d]ismissal without leave to amend is justified only on the grounds of bad faith, undue delay, prejudice, or futility." *Alston v. Parker*, 363 F.3d 229, 236 (3d Cir. 2004).

"Delay is 'undue' when it places an unwarranted burden on the court or when the plaintiff has had previous opportunities to amend." *Estate of Oliva v. N.J., Dep't of Law & Pub. Safety, Div. of State Police*, 604 F.3d 788, 803 (3d Cir. 2010).

Futility "means that the complaint, as amended, would fail to state a claim upon which relief could be granted." *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 231 (3d Cir. 2011), *cert. denied*, 132 S. Ct. 1861 (2012).

### B.

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In deciding a motion for summary judgment, the court must construe all

5

facts and inferences in the light most favorable to the nonmoving party. *See Boyle v. Allegheny Pennsylvania*, 139 F.3d 386, 393 (3d Cir. 1998). The moving party bears the burden of establishing that no genuine issue of material fact remains. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). A fact is material only if it will affect the outcome of a lawsuit under the applicable law, and a dispute of a material fact is genuine if the evidence is such that a reasonable fact finder could return a verdict for the nonmoving party. *See Anderson*, 477 U.S. at 252.

"[A] party may file a motion for summary judgment at any time until 30 days after the close of all discovery." Fed. R. Civ. P. 56(b).

### III.

The Court addresses Plaintiff's Motion to Amend and Defendant's Motion to Dismiss before turning to Defendant's Motion for Summary Judgment.

#### A.

Plaintiff moves to amend the Complaint to add a survivorship claim and a negligence *per se* claim. The Proposed Amended Complaint also attempts to address some of the asserted pleading deficiencies Defendant raised in its Motion to Dismiss. Defendant opposes the Motion, arguing that: (1) amendment is futile; (2) amendment was

unduly delayed; (3) allowing amendment would unduly prejudice Defendant; and (4) amendment was proposed in bad faith.

## 1. Futility

Defendant asserts two futility arguments both of which fail.

*Statutes of limitations*

First, Defendant argues that both proposed new claims are barred by their respective statutes of limitations. As to the survivorship claim, the two-year statute of limitations, N.J.S.A. 2A:15-3, has not run. Defendant erroneously assumes that the claim accrued on the day of Jose Cruz's accident (September 15, 2010), whereas the statute expressly states that a survivorship action must be "commenced within two years after *the death of the decedent*." Id. (emphasis added). Jose Cruz died on July 12, 2011; the survivorship claim accrued on that day, not the day of the accident. Therefore, the claim (included in the Proposed Amended Complaint filed on February 28, 2013) is not barred by the statute of limitations.

As to the new negligence *per se* claim, the Court concludes that the proposed claim relates back to the original Complaint, therefore the claim is not barred by the two-year statute of limitations found in N.J.S.A. 2A:14-2. Fed. R. Civ. P. 15(c)(1)(B) provides in relevant part, "[a]n amendment relates back to the date of the original pleading when: the amendment asserts a claim or defense that

arose out of the conduct, transaction, or occurrence set out . . . in the original pleading."

Plaintiff asserts that Defendant was negligent *per se* when it violated New Jersey Motor Vehicle Racetrack Regulations by allegedly failing to inspect Jose Cruz's car prior to racing on September 15, 2010.[6] This claim arises out of the same occurrence alleged in the original complaint: Jose Cruz's injury and eventual death; and the same alleged conduct: Defendant's failure "to provide a reasonably safe racing environment" on September 15, 2010. (Compl. ¶ 36) Thus, the proposed negligence *per se* claim relates back to the date of original complaint, and is not barred by the statute of limitations.

*Statutory immunity*

Second, Defendant argues that amendment is futile because it is immune from suit pursuant to New Jersey's Good Samaritan Law, N.J.S.A. 26:2K-29, which provides,

> No EMT-intermediate, licensed physician, hospital or its board of trustees, officers and members of the medical staff, nurses or other employees of the hospital, or officers and members of a first aid, ambulance or rescue squad shall be liable for any civil damages as the result of an act or the omission of an act committed while in training for or in the rendering of intermediate life

---

[6] The Proposed Amended Complaint also asserts that Defendant violated the relevant regulations by failing to have an ambulance immediately available to respond to an emergency and failing to have at least two EMT's immediately available to respond to an emergency. But Defendant does not argue that these claims do not relate back to the original complaint, which alleges that "[d]efendant[] ATCO . . . had a duty to prepare for the danger of car crashes and the possibility of a resultant fire." (Compl. ¶ 37)

8

support services in good faith and in accordance with this act.

Defendant's argument fails because the statute, on its face, does not apply to corporations that operate racetracks.[7] *Cf. Murray v. Plainfield Rescue Squad*, 210 N.J. 581 (2012) (holding that Good Samaritan Law did not shield rescue squad, as an entity, from a negligence suit because statute explicitly refers only to "officers and members" of a rescue squad).

### 2. Undue delay

Defendant points to no facts supporting a finding of undue delay in amending the Complaint. The Motion to Amend was filed within the time for amending pleadings established by Magistrate Judge Donio's Scheduling Order of January 7, 2013. Moreover, the Motion to Amend was filed well before the deadline for finishing pretrial factual discovery, which was, at the time, June 28, 2013.[8] *Contrast Estate of Oliva*, 604 F.3d at 803 (holding delay was undue where Plaintiff sought to amend the complaint five years after the complaint was filed and after the close of discovery).

### 3. Undue prejudice

Defendant also does not articulate how it will be unduly prejudiced by the amendment. It merely argues that "Defendant is

---

[7] The individual EMTs at the racetrack on the day of the crash were not named as Defendants in the original Complaint, and are not named as Defendants in the Proposed Amended Complaint.

[8] The deadline was later extended to July 31, 2013.

prejudiced by the undue delay." (Opposition Brief p. 10) However, as already stated, there is no undue delay.

### 4. Bad faith

Lastly, nothing in the record suggests that the Amended Complaint was proposed in bad faith. Defendant urges the Court to conclude that the amendment is in bad faith because the new claims allegedly fail on the merits.

First, even if the new claims were not meritorious (which the Court does not hold), asserting a claim that ultimately fails is not tantamount to asserting a claim in bad faith. *Cf. Wartsila NSD North Am., Inc. v. Hill Int'l, Inc.*, 342 F. Supp.2d 267, 274 (D.N.J. 2004) ("'[T]o say that a party confronts difficult questions of factual sufficiency is not the same as saying its claims are patently frivolous.'") (quoting *Ford Motor Co. v. Summit Motor Prods., Inc.*, 930 F.2d 277, 290 (3d Cir. 1991)).

Second, for the reasons stated in this Opinion, the Court rejects every one of Defendant's arguments in support of its argument that the instant suit is without merit.

In light of the foregoing, Plaintiff's Motion to Amend the Complaint will be granted.

### B.

Defendant moves to dismiss the Amended Complaint arguing that Plaintiff does not plead sufficient facts supporting a plausible

inference that Defendant's alleged negligence caused Jose Cruz's death.[9]  According to Defendant,

> the Complaint [is] vacant of any plausible facts to support the blanket conclusion that after Cruz crashed his car into the wall causing both the car and Cruz himself to be engulfed in flames, the purported failure of an ambulance and fire suppression equipment made any difference whatsoever.  Plaintiff's decedent, a diabetic who sustained 2nd and 3rd degree burns to his hands and feet, passed away approximately 11 months after this incident. . . .
>
> . . . [T]here are no assertions that a man, let alone this man, in this exact circumstance could have or would have survived the initial crash and subsequent immediate fire engulfment of his vehicle and his person, even if he had a fire extinguisher in his vehicle and put it to use when he brought his vehicle to a controlled stop some approximate 5/8ths of a mile past the start line.

(Moving Brief, p. 14)

In a nutshell, Defendant's argument seems to be that only preventing the crash altogether could have prevented Jose Cruz's death, and since Defendant's alleged negligence in failing to respond sooner could not possibly have prevented the crash, Defendant cannot be liable.

Perhaps a jury will ultimately agree with Defendant's argument. However, a reasonable juror could plausibly conclude from the factual allegations of the Amended Complaint that if the ambulance had reached Jose Cruz earlier-- for example, while he was still strapped in the car-- his burns would not have been as severe as they were,

---

[9] Defendant moved to dismiss the original Complaint before Plaintiff moved to amend the Complaint.  However, Defendant's argument is not entirely mooted by the Amended Complaint and therefore the Court considers the argument as it still applies to the allegations of the Amended Complaint.

11

and therefore Jose Cruz would not have died.  The allegations of the Amended Complaint do not necessarily require a reasonable juror to conclude that preventing the crash was the only way to prevent Jose Cruz's death.

Accordingly, Defendant's Motion to Dismiss will be denied.[10]

### C.

Defendant asserts three arguments in support of its Motion for Summary Judgment: (1) Jose Cruz's assumption of the risk of severe injury and death precludes Defendant's liability; (2) Jose Cruz released Defendant from all claims asserted in this suit; and (3) the record evidence provides no basis upon which to impose punitive damages.  The Court addresses each argument in turn.

#### 1. Assumption of risk

Employing a theory of "primary" assumption of risk, Defendant argues that Plaintiff's evidence fails to establish that Jose Cruz's injuries and death were "caused by a risk other than one inherent in a well-run" drag racing strip, *Meistrich v. Casino Arena Attractions,*

---

[10] Defendant asserted two other arguments in its Motion to Dismiss. The first-- that the Complaint failed to identify any laws governing the use of ambulances and fire equipment at racetracks-- is mooted by the Amended Complaint.
   The second-- that Jose Cruz assumed the risk of his injuries and death and released Defendant from all liability-- is more appropriately considered within the context of Defendant's Motion for Summary Judgment, *see infra*.

*Inc.*, 31 N.J. 44, 49 (1959), therefore Defendant cannot be liable for negligence.[11]

However, Plaintiff has put forth sufficient evidence creating a material fact issue as to whether Jose Cruz's injuries and death were caused, not by a risk inherent in even the most carefully operated drag strip, but rather by Defendant's breach of duty. *See Meistrich*, 31 N.J. at 49 ("primary" assumption of risk "is an alternate expression for the proposition that defendant was not negligent, i.e., either owed no duty or did not breach the duty owed.").

Plaintiff relies upon New Jersey Motor Vehicle Racetrack Regulations for the source of Defendant's duty. The relevant provisions provide:

> The licensee shall not permit any race, practice or exhibition of driving skill unless there is available *for immediate use* at the licensed location at least one vehicle suitable for ambulance purposes, together with two certified EMTs.
>
> The licensee shall arrange for the inspection of each participating vehicle prior to the event, to determine that it meets the requirements of this chapter.
>
> The licensee shall arrange for the inspection of each participating vehicle prior to the event, to determine that it meets the requirements of this chapter. Vehicles not meeting the requirements set forth for the specified event shall be barred by the licensee from participation or practice.

N.J.A.C. §§ 13:62-2.18 (emphasis added); 13:62-5.8; 13:62-2.13.

---

[11] As discussed at length in *Meistrich*, "secondary" assumption of the risk is indistinguishable from contributory negligence. 31 N.J. at 50-55. Defendant does not presently move for summary judgment based on contributory negligence.

13

Plaintiff has put forth sufficient facts raising a question as to whether Defendant complied with the regulations.

With respect to the availability of the ambulance, Plaintiff submits the affidavits of Evelyn and Joseph Cruz, as well as spectators Ramon Fernandez and Chelin Anazagasty, which all state that just after the crash, they observed that the ambulance did not immediately start, despite track personnel's attempts to start the vehicle. (E. Cruz Aff. ¶ 7; J. Cruz Aff. ¶ 6; Fernandez Aff. ¶ 5; Anazagasty Aff. ¶ 4) Anazagasty specifically states that he "heard the engine turn over, but fail to start at least four or five times." (Anazagasty Aff. ¶ 4) Even Richard Gardner, Defendant's EMT, states that after he "turned the ignition over in the diesel ambulance," he had to "[]wait [for] the glow plugs to heat up" before the engine would start. (Gardner Aff. ¶ 7)

This evidence raises a material factual dispute as to whether Defendant breached its duty, pursuant to state regulations, to have an ambulance immediately available to respond to Jose Cruz's crash.[12]

---

[12] With respect to the time within which the ambulance responded to the crash, Defendant also relies on a video recording of the drag strip allegedly taken in the normal course of business. According to Defendant, the video shows the ambulance responding 43 seconds after the crash.

The Court has viewed the video. It is not very clear, and to a viewer unfamiliar with the drag strip facility, it is not apparent that the vehicle responding 43 seconds after the crash is an ambulance; although Defendant provides affidavits from witnesses stating that the vehicle is the ambulance.

Moreover, Plaintiff has raised questions as to the video's authenticity. For example, the video was not produced in original format, bears no date or time stamp, and the hard drive on which the video was stored was subsequently destroyed by lightning.

Similarly, Plaintiff has put forth sufficient evidence raising a fact issue as to whether Defendant inspected Jose Cruz's car on the day of the crash. While Defendant relies on the undisputed fact that a technical inspection form dated September 15, 2010, exists for Jose Cruz's vehicle, Plaintiff has satisfied her summary judgment burden of putting forth facts calling into question whether such an inspection was actually performed, or at the very least performed correctly.

It is undisputed that the technical inspection form (Sirotkin Aff. Ex. 8) is missing many pieces of information, including Cruz's drivers license number and issuing state, Cruz's age, license plate number, as well as the vehicle year and make. (Id.) Perhaps most importantly, the eight-item engine inspection checklist is completely blank. (Id.)[13]

---

Lastly, Evelyn Cruz and Joseph Cruz state in their affidavits that the video "is not an accurate depiction" of what happened on the day in question. (E. Cruz Aff. ¶ 17; J. Cruz Aff. ¶ 16)

For all of these reasons, the video does not resolve the material questions of fact concerning the response time of the ambulance, and contrary to Defendant's assertions, summary judgment is not warranted on the basis of the video.

Defendant's reliance on *Scott v. Harris*, 550 U.S. 372 (2007) does not change the Court's conclusion. First, *Scott* involved a qualified immunity question in an excessive force case, a factual and legal scenario much different than this case. Second, *Scott* specifically explained that with respect to the videotape at issue, "[t]here [were] no allegations that th[e] videotape was doctored or altered in any way, nor any contention that what it depicts differs from what actually happened." 550 U.S. at 378. In this case Plaintiff does contend that what the video depicts is not what happened. Thus, *Scott* is clearly distinguishable.

[13] Plaintiff also points to two different versions of the technical inspection form in the record: one which bears Brian Sway's initials

15

Additionally, Evelyn Cruz and Joseph Cruz both state in their affidavits that "nobody from the track ever inspected [Jose Cruz's] vehicle" on the day of the crash. (E. Cruz Aff. ¶ 18; J. Cruz Aff. ¶ 17)

This evidence raises a material factual dispute as to whether Defendant breached its duty, pursuant to state regulations, to inspect Jose Cruz's vehicle. Summary Judgment will be denied as to this issue.

### 2. Release

Disputed issues of material fact also preclude summary judgment for Defendant on the issue of Jose Cruz's alleged release of liability. Evelyn and Joseph Cruz both state that Jose Cruz did not sign a release on the day of the crash. (E. Cruz Aff. ¶ 20; J. Cruz Aff. ¶ 17) Evelyn Cruz also specifically states that the signature on the release is not her husband's. (E. Cruz Aff. ¶ 20)

Moreover, similar to the Technical Inspection Form, the record contains two different versions of the release. One version of the release was witnessed by Brian Sway (Sirotkin Aff. Ex. 11), and one was not (Sirotkin Aff. Ex. 10). Also, neither document bears a date, which is significant since the parties agree that Jose Cruz had raced

---

indicating that he completed the inspection (Sirotkin Aff. Ex. 8) and one which does not have any initials (Sirotkin Aff. Ex. 10). The Court agrees that this discrepancy creates further issues of fact requiring resolution by a jury. However, both versions of the form are completely blank with respect to the engine inspection checklist. Thus a reasonable juror could infer from either form (or both) that the engine of Jose Cruz's vehicle was never inspected.

at Atco Raceway on prior occasions.  These material issues of fact preclude summary judgment for Defendant on the waiver issue.

### 3. Punitive damages

Lastly, Defendant argues that there are no facts in the record upon which to base a punitive damages award.  The Court disagrees.

Under New Jersey's Punitive Damages Act, "[p]unitive damages may be awarded to the plaintiff only if the plaintiff proves, by clear and convincing evidence, that the harm suffered was the result of the defendant's acts or omissions, and such acts or omissions were actuated by actual malice *or* accompanied by a wanton and willful disregard of persons who foreseeably might be harmed by those acts or omissions." N.J.S.A. 2A:15-5.12 (emphasis added).  To establish that a defendant's act or omission was "wanton and willful," a "plaintiff must prove . . . a deliberate act or omission with knowledge of a high degree of probability of harm and reckless indifference to the consequences."  *Smith v. Whitaker*, 160 N.J. 221, 242 (1999) (internal citation and quotation omitted).

The record evidence, viewed in the light most favorable to Plaintiff, supports the reasonable conclusion that Defendant deliberately ignored New Jersey safety regulations governing drag strips, and knew that failing to follow safety precautions could result in severe injury or death, but allowed Jose Cruz to race anyway.

Defendant's Motion for Summary Judgment as to punitive damages will be denied.

**IV.**

In conclusion, this serious and factually complex case is still in its early stages. Discovery is ongoing. The discovery which has already taken place has revealed several factual wrinkles and subtleties. Under such circumstances, and for the specific reasons stated above, dismissal of Plaintiff's claims either on a motion to dismiss, or on summary judgment, is particularly inappropriate at this time.

In light of the foregoing, Plaintiff's Motion to Amend the Complaint will be granted and Defendant's Motion to Dismiss / Motion for Summary Judgment will be denied. An appropriate Order accompanies this Opinion.

Date:  June 27, 2013                 ___s/ Joseph E. Irenas_____
                                     JOSEPH E. IRENAS, S.U.S.D.J.