```
              UNITED STATES DISTRICT COURT
                 DISTRICT OF NEW JERSEY
```

EVELYN CRUZ, on her own behalf   :   Civil No. 12-5143 (JEI/AMD)
and as Administratix of the      :
Estate of Jose Cruz,             :
                                 :
        Plaintiff,               :
                                 :           **OPINION**
        v.                       :
                                 :
ATCO RACEWAY, INC.,              :
                                 :
        Defendant.               :

**APPEARANCES:**

MORELLI RATNER PC
By: David T. Sirotkin, Esq.
950 Third Avenue
New York, New York 10022
        Counsel for Plaintiff

SALMON, RICCHEZZA, SINGER & TURCHI, LLP
By: Timothy J. Schipske, Esq.
Tower Commons
123 Egg Harbor Road, Suite 406
Sewell, New Jersey 08080
        Counsel for Defendant

**IRENAS**, Senior United States District Judge:

   This wrongful death / negligence suit arises out of a fiery car crash that occurred at the drag racing strip owned by Defendant Atco Raceway, Inc. The decedent, Jose Cruz, was severely burned after his racecar crashed into a wall. Although Cruz was able to escape the car and walk away from the crash, he ultimately died.

1

Before the Court is Defendant Atco Raceway's second Motion for Summary Judgment.  For the reasons stated herein, the Motion for Summary Judgment will be granted in part and denied in part.[1]

## I.

### *The Scene and Situation at the Drag Strip*

Jose Cruz was one of several drivers who were participating in timed drag racing runs at Atco Raceway on September 15, 2010.  The track was not open to the general public that day.  Juan Torres, who goes by the name "John Hyper," rented out the track for himself and his acquaintances, which included Jose Cruz.  (Torres Dep. p. 16, 35, 43, 77, 83, 99)  Such private "rental days" are distinguished from public "race days" insofar as 10-15 vehicles typically use the strip on rental days, whereas on race days, 50 to 100 vehicles use the strip.  (Torres Dep. p. 43-44; J. Swierczynski Dep. p. 59)

Because rental days involve many less vehicles, organizational and safety concerns at the track are different.  (J. Swierczynski Dep. p. 59)  Fewer Atco Raceway employees work on rental days, and those who are working sometimes do more than one job.  (B. Gardner Dep. p. 46-47, 54-55; B. Swierczynski Dep. p. 123-24)  Particularly relevant to this case, on race days, two EMTs are stationed inside an ambulance parked at the finish line.  (B. Gardner Dep. p. 46; Torres

---

[1] The Court exercises diversity jurisdiction pursuant to 28 U.S.C. § 1332.  The parties are completely diverse and the amount in controversy exceeds the statutory minimum.

Dep. p. 48-49)  In contrast, however, on rental days, the ambulance is stationed at the starting line, and the two EMTs do double-duty: in addition to their EMT responsibilities, one EMT operates the time clock in the timing tower, while the other operates the starting light and hands out time slips.  (B. Gardner Dep. p. 46-49; J. Swierczynski Dep. p. 102-03; Johannessen Dep. p. 16-17)  Both the timing tower and the starting light are near the starting line.

This was, indeed, the situation on September 15, 2010.  EMTs Bruce and Betty Anne Gardner, husband and wife, were operating the starting light and time clock, respectively, while simultaneously being responsible for any medical emergency that might arise.  (B. Gardner Dep. p. 49, 66-67; J. Swierczynski Dep. p. 102-03; B. Swierczynski Dep. p. 106-07, 145; R. Gardner Aff. ¶ 3-4)  The "Ford heavy-duty diesel ambulance / EMT response Unit" was "stationed near the start line." (R. Gardner Aff. ¶¶ 3-4)

Brian Swierczynski (a.k.a. Brian Sway), the track manager on duty that day, was responsible for: (1) inspecting the racecars prior to racing, and (2) collecting the Technical Inspection Forms (which include a broad release and waiver of liability) that are to be completed by the drivers.  (Torres Dep. p. 83, 156-57; B. Swierczynski Aff. ¶¶ 1-2)  New Jersey Regulations mandate that a technical and safety inspection be performed prior to racing.  *See* N.J.A.C. § 13:62-2.13.  If a vehicle does not pass inspection, it "shall be barred by [Atco Raceway] from participation or practice." *Id.*

There is conflicting evidence in the record concerning whether Brian Sway inspected Jose Cruz's vehicle on the day of the crash. Plaintiff Evelyn Cruz, and her son, Joseph Cruz, both state that nobody from Atco Raceway inspected Jose's car. (E. Cruz Aff. ¶ 18; E. Cruz Dep. p. 86-88; J. Cruz Aff. ¶ 17[2]) Moreover, Plaintiff testified that Atco Raceway "never" inspects "any" vehicles on private rental days, and she did not see anyone inspecting vehicles on the day of the crash. (E. Cruz Dep. p. 86-88)

But Brian Sway testified that he did inspect Jose's car that day. (B. Swierczynski Dep. p. 111-13) Additionally, Sean Johannessen testified that he saw Sway inspecting Jose Cruz's vehicle. (Johannessen Dep. p. 82-84)

The documentary evidence also raises questions as to whether Jose's car was inspected (or at the very least properly inspected) on the relevant day. As noted in the prior opinion, there are two versions of the technical inspection form in the record (both of which are undated)-- one bearing Brian Sway's initials (indicating that he performed an inspection) and one with no initials. *Estate of Cruz*, 2013 WL 3283964 at *6 n.13. Moreover, even the initialed version of the form is completely blank with respect to 25 out of 35 inspection checklist items. (Pl's Ex. 19)[3] Lastly, Detective

---

[2] Joseph Cruz's deposition is not included in the summary judgment record. It is not clear whether he was deposed. Apparently, he is incarcerated.

[3] It appears undisputed that the driver, not the person inspecting the vehicle, completes the Technical Inspection Form. However, the

4

Kowalski who investigated the accident, stated in his Investigation Report, "it was apparent immediately that Mr. Cruz's vehicle did not undergo a thorough technical inspection."  (Pl's Ex. 20)

It is also undisputed that on the day of the accident, Jose Cruz's National Hot Rod Association (NHRA) license was expired (E. Cruz. Aff. ¶ 21), and that a valid license was required to participate in the type of racing Jose Cruz was doing.  (Kowalski Dep. p. 47-49)  Detective Kowalski testified that if a driver makes a "sub-10 second" timed run without a valid NHRA license "it would be the track's responsibility to say slow down.  If it happens again, you'll be told to leave."  (Id. at p. 49)  Jose Cruz's time records from that day indicate that all of his runs were under 10 seconds; he made four runs at 8.483, 9.159, 8.603, and 8.561 seconds, respectively, before his fifth run during which he crashed.  (Pl's Ex. 21)

*The Accident*

Sean Johannessen testified that just before Jose Cruz's fifth run, Jose Cruz had installed "long reach spark plugs" in his car. (Johannessen Dep. p. 61-62)  Johannessen explained that he could tell that these were "the wrong spark plugs" because he observed Jose's car "misfiring" so badly that "the car would barely stay running;"

---

regulations are clear that Atco Raceway must inspect the vehicle. Thus, a reasonable juror could infer that, at the very least, Brian Sway accepted an obviously incomplete form.

"it was missing like crazy." (Id. at p. 61, 62)[4] Johannessen testified that he "told [Jose] to put the car on the trailer and don't make another pass . . . because the spark plugs were hitting the pistons." (Id. at p. 62) Instead, Jose took out the long reach spark plugs and replaced the spark plugs he had been using up until that point. (Id.)

According to time records, Jose Cruz's last run took place at 4:19 p.m. (Def's Ex. E) His vehicle raced down the strip, reaching a speed of 150 miles per hour. (Id.) Then, John Hyper testified, he could "hear the RPMs of [Jose Cruz's] motor just rev to, I mean beyond what . . . you know, beyond what you know a motor should go, and then a pa-boom, everything just blew up; smoke, black smoke, white smoke, everything." (Torres Dep. p. 110-11)

Sean Johannessen similarly testified, Jose "got roughly to the thousand foot mark, and I believe one of the rods in the engine let go. And all of a sudden, when the motor let go, he had the explosion and a big ball of flame. . . . I believe it was on the left-hand side of the motor a big ball of flame came out." (Johannessen Dep. p. 30)

Jose Cruz's car came to rest approximately three-quarters of a mile from the starting line. (B. Swierczynski Dep. p. 147)

EMT Betty Anne Gardner testified that from her position at the top of the time tower, she saw black smoke coming from Jose Cruz's

---

[4] Johannessen has been racing cars for 20 years. Over the last 18 years, he estimates he has raced at Atco Raceway 15 times a year. (Johannessen Dep. p. 12-13)

6

car and immediately knew something was seriously wrong. (B. Garner Dep. p. 68-69) She got up from her seated position to start down the 30 metal stairs of the tower. (Id. p. 67, 69) As she was "running" down the stairs, she radioed Atco personnel to report that there had been an accident, and then called 911 from her cell phone. (Id. p. 69) When she got to the base of the tower, she traveled approximately 100 feet to get into her car to drive to the crash scene. (Id. p. 72-73) When she entered her car, "the ambulance was going down the track." (Id. p. 73)

EMT Richard Gardner drove the ambulance. He stated in his affidavit that he saw smoke from Jose Cruz's car, and received his wife's radio call, as he entered the ambulance. (R. Gardner Aff. ¶ 5-6) He "turned the ignition over in the diesel ambulance, awaited the glow plugs to heat up, started the ambulance, and then proceeded down the Race Surface." (Id. ¶ 7) Other witnesses also observed that the ambulance did not immediately start. (Joseph Cruz Aff. ¶ 6; Fernandez Aff. ¶ 5; Anazagasty Aff. ¶ 4)

Brian Sway was the first person to reach the crash site. (Torres Dep. p. 112; B. Swierczynski Aff. ¶ 14; B. Swierczynski Dep. p. 148; R. Gardner Aff. ¶ 8) Specifically, Brian Sway testified, "I was the first one on the scene and down the track, because I was already rolling [in my pick-up truck]. Whether coincidence or not, I was already moving in my vehicle heading there." (B. Swierczynski Dep. p. 150) Sway navigated through debris on the track and arrived "maybe 20 seconds" after he left the starting line. (Id. p. 153)

7

Jose Cruz was out of the burning car and walking away when Sway arrived. (Id. p. 156-57)

John Hyper was next to arrive. (E. Cruz Aff. ¶ 10; B. Swierczynski Dep. p. 163; Torres Dep. p. 112, 121) He began helping Jose Cruz take off his racing suit, which was smoking, as well as the rest of his clothes: "his fire jacket, shirt, pants, shoes, everything" down to his underwear. (Torres Dep. p. 121-22; E. Cruz Dep. p. 54) Then the ambulance arrived. (Torres Dep. 123-24; B. Swierczynski Dep. p. 161)[5]

Richard Gardner approached Jose Cruz and began to evaluate his condition. (Torres Dep. p. 124) Betty Anne Gardner arrived shortly thereafter. Upon observing Jose Cruz's hands, face and legs, she called for "a helicopter to fly him up to trauma." (B. Gardner Dep. p. 78)

The parties dispute what happened next. Plaintiff testified that the EMTs "just stood there" until the helicopter arrived. (E. Cruz Dep. p. 63-64) Ramon Fernandez also stated in his affidavit that "the EMTs did not provide Mr. Cruz with oxygen and did not appear to

---

[5] Defense counsel extensively relies on a video recording which Defendant asserts captures the timing of the emergency response by various Atco employees. Plaintiff disputes the authenticity and accuracy of the recording. This issue was fully addressed in the Court's previous summary judgment opinion. *See Estate of Cruz v. Atco Raceway,* 2013 WL 3283964 at *6 fn.12 (D.N.J. 2013) ("the video does not resolve the material questions of fact concerning the response time of the ambulance, and contrary to Defendant's assertions, summary judgment is not warranted on the basis of the video.").

8

give him attentive medical care." (Fernandez Aff. ¶ 11; J. Cruz Aff. ¶ 10)

But other record evidence indicates that the EMTs were trying to care for Jose Cruz but he was "agitated" and "combative" and refused an oxygen mask and burn sheets. (R. Gardner Aff. ¶¶ 9-10; B. Gardner Dep. p. 82-85; Torres Dep. p. 129, 131; Johannessen Dep. p. 41)

Within minutes the trauma helicopter arrived and airlifted Jose Cruz to Cooper Hospital in Camden, New Jersey. (E. Cruz Aff. ¶ 12; J. Cruz. Aff. ¶ 11; Johanessen Dep. p. 43; Torres Dep. p. 126)

At some later point, Jose Cruz was transferred to a New York City hospital, as it was closer to his home in Brooklyn. He never left the hospital, and at some point during his stay had both legs amputated. He died on July 12, 2011.

Detective Kowalski investigated the accident and concluded that the crash was caused by "a catastrophic engine failure." (Pl's Ex. 20) Specifically, he reported "as a result of the engine failure, a nitrous line located on the left side of the engine compartment was compromised and subsequently caused a fire. The fire began in the engine compartment and traveled to the cockpit as the vehicle traveled down [the] track." (Id.)

The Amended Complaint asserts four claims: negligence, negligence per se, wrongful death, and survivorship. Atco Raceway moves for summary judgment on all claims.

**II.**

9

The Court incorporates by reference the summary judgment standard set forth in the previous opinion, *see Estate of Cruz,* 2013 WL 3283964 at *2.

### III.

### A. Release of Claims

The Court previously denied summary judgment on this issue because the record evidence raised triable issues of disputed fact. Specifically, Jose Cruz's widow stated that Jose did not sign the release and the signature purporting to be his was not actually his. *Estate of Cruz,* 2013 WL 283964 at *6. Moreover, the Court also observed that the release asserted to be the document signed on the day of the accident was not dated, which was material because Jose Cruz undisputedly had raced at Atco Raceway on other occasions. *Id.*

Obviously, these facts are still part of the record. The jury question-- namely, did Jose Cruz waive his rights and release his claims?–- still remains.

The defense attempts to side-step this issue by relying on Evelyn Cruz's testimony that, on the relevant day, she signed the release for her husband because he was illiterate. (E. Cruz Dep. p. 32-36) But this evidence does not resolve the issue.

As the Court explained at oral argument, even if Evelyn Cruz signed on her husband's behalf, there is no evidence that she read the document to him or that he affirmatively indicated that he agreed to the waiver's terms.

Summary judgment as to the release issue will be denied.

### B. Negligence

Plaintiff posits three theories of negligence: (1) Atco Raceway failed to provide an adequate emergency medical response; (2) Atco Raceway failed to properly inspect Jose Cruz's vehicle; and (3) Atco Raceway allowed Cruz to race even though he did not have a valid license to race.[6]

The Court holds that theories two and three fail for lack of proximate cause,[7] but one does not.

Assuming *arguendo* that a reasonable factfinder could conclude that Atco Raceway was negligent in failing to check Jose Cruz's expired license and failing to properly inspect his vehicle, there is no record evidence that these failures proximately caused the accident. Indeed, when specifically asked at oral argument,

---

[6] Plaintiff refers to these theories as "negligence per se" claims. This is somewhat of a misnomer insofar as under New Jersey law, violations of administrative regulations are relevant evidence of negligent conduct, not proof of negligence per se. *Frugis v. Bracigliano,* 177 N.J. 250, 271 (2003).

[7] "To sustain a cause of action for negligence, a plaintiff must establish four elements: (1) a duty of care, (2) a breach of that duty, (3) proximate cause, and (4) actual damages." *Townsend v. Pierre,* 221 N.J. 36, 52 (2015) (quoting *Polzo v. Cnty. of Essex*, 196 N.J. 569, 584 (2008)).

"Proximate cause consists of any cause which in the natural and continuous sequence, unbroken by an efficient intervening cause, produces the result complained of and without which the result would not have occurred." *Id.* (internal quotation and citation omitted).

Plaintiff's counsel could not point to any record evidence supporting this element of the claims.

It is undisputed that Jose Cruz's engine suffered a catastrophic failure, which the uncontradicted record evidence suggests was caused by Jose Cruz's own actions when he used the wrong spark plugs.

As to the failure to check Jose Cruz's license, it is a rather obvious point that Jose Cruz's failure to have a current (i.e., unexpired) license, and Atco Raceway's failure to inquire, could not have caused the engine failure and crash.

The same conclusion obtains as to the asserted failure to inspect Jose Cruz's vehicle. The record evidence demonstrates that an inspection of the engine would not have revealed the spark plug issue, nor the attendant damage to the engine. John Hyper, who has been racing cars for 30 years and makes his living building race cars and muscle cars (Torres Dep. p. 28, 30), testified that "you can't check a motor. You know, you can check the hood area. Make sure there's no leaks of oil, antifreeze leaks, you know, things that are visible, but internally in a motor nobody could check that, not even a mechanic, no one. You can't check the internals of a motor, it's impossible." (Torres Dep. p. 111)

Therefore, neither theory two nor three can survive summary judgment.

The first theory, however, is materially different because it does not depend on a jury finding that Atco Raceway's asserted negligence caused the crash. Rather, a reasonable juror could

12

conclude that failing to have an ambulance immediately available caused Jose Cruz's injuries to be more severe than they otherwise would have been. *See generally Scafidi v. Seiler,* 119 N.J. 93, 110 (1990) ("a defendant whose acts aggravate a plaintiff's preexisting condition is liable only for the amount of harm actually caused by the defendant's negligence."). As Plaintiff's medical expert states in his report,

> [i]t is essential to treat burn victims immediately because every second counts, and time equals tissue. Delays of even seconds increases degree and extent of burn area, and denies patients their best possible outcome and even survival. Had the EMTs gotten to Mr. Cruz immediately, they would have been earlier able to suppress the fire and flames, and get him out of his burning hot clothes, and initiate actions to reduce his burn area and degree. [If this had been done] some of Jose Cruz's burns that were third degree burns would have been first or second degree burns, and some burns could have been prevented. . . . [H]is chance of survival would have been significantly increased.

(Pl's Ex. 23, Expert Report of Dr. Ira Mehlman, M.D.)

Moreover, a reasonable juror could find that Atco Raceway breached its duty of care to Jose Cruz by (1) placing the ambulance at the starting line rather than the finish line; (2) using the EMTs to operate the time clock and starting lights; and (3) using an older model ambulance which required the glow plugs to light up, the combination of which added up to an unreasonable delay in the medical treatment of Jose Cruz's injuries.

Accordingly, summary judgment will be denied as to the first theory of liability.

### C. Wrongful death

New Jersey's Wrongful Death statute provides in relevant part, "the jury may give such damages as they shall deem fair and just with reference to the pecuniary injuries resulting from such death, together with the hospital, medical and funeral expenses incurred for the deceased." N.J.S.A. 2A:31-5 (emphasis added).

There are two basic categories of damages available under the statute: (1) "economic losses, measured in accordance with educational, occupational, demographic and other relevant factors, [which] derive from the decedent's expected contributions during his or her continued lifetime, whether that lifetime would have been measured in months, years, or decades"-- i.e., "financial support," and (2) "non-economic . . . damages [] premised on such services as companionship, care, advice, guidance and counsel that the decedent would have provided to his or her survivors"-- i.e., "services." *Beim v. Hulfish*, 216 N.J. 484, 505 (2014).[8]

Atco Raceway has moved for summary judgment on only the first category of damages, asserting that "Plaintiffs have provided absolutely no financial information in regard to the calculable

---

[8] Of course, the statute also explicitly authorizes the recovery of funeral expenses, as does New Jersey's Survivor's Act, N.J.S.A. 2A:15-3. As to this discrete issue, the Court holds that Plaintiff's interrogatory answer stating that Mrs. Cruz incurred funeral expenses in the amount of $6,705.00, along with the receipt from the funeral home indicating that $6,705.00 was "paid in full," (Pl's Ex. 24) is sufficient to sustain Plaintiff's summary judgment burden. Summary judgment will be denied as to this aspect of Plaintiff's wrongful death / survivorship claim.

14

economic losses arising from the death of Mr. Cruz." (Moving Brief, p. 41)

Plaintiff counters that her Answers to Interrogatories state that Jose Cruz was employed as a custodian from 2001 to 2007, and 2008 through the date of his accident on September 15, 2010, earning wages of "approximately $18.00 an hour." Plaintiff also provides a 2010 New York State TurboTax form which states that Jose's federal adjusted gross income was $28,095.00 and his total New York State adjusted gross income was $27,978.00. (Pl's Ex. 24)

The issue is whether such evidence is sufficient to support a jury finding as to the value of Jose Cruz's expected future financial contributions. The Court concludes that it is.[9]

"The role of the fact finder is to determine the projected value of the contribution that the decedent would have made to the support of those claiming under the [wrongful death] statute. All probabilities and every reasonable expectation should be considered."

---

[9] Importantly, for the purposes of this Motion only, the Court assumes the admissibility of the 2010 tax document, which appears to be a copy of a TurboTax form. The admissibility of this document, however, is far from apparent.
  First, the document is not properly authenticated. Nothing before the Court indicates where this document came from, nor who created it, which is a significant issue in light of the record evidence that Jose Cruz was illiterate.
  Also, there is no evidence that the TurboTax form was actually filed with the relevant taxing authority. *See generally* Fed. R. Evid. 901(7) (public records are authenticated by evidence that a document was recorded or filed in a public office as authorized by law; or a purported public record or statement is from the office where items of this kind are kept).
  Second, even if the document can be authenticated, it may be inadmissible hearsay.

15

*Curtis v. Finneran*, 83 N.J. 563, 569 (1980).  "Factors" the jury "may weigh" include "the age and general state of health of the decedent and survivors," "the net earnings of the decedent after taxes as of the time of the time of his/her death," "the decedent's potential future net income during the balance of his/her working life expectancy," and "the decedent's own personal expenses."  New Jersey Model Civil Jury Charges, 8.43 Wrongful Death.

As the Third Circuit has observed, "New Jersey case law provides that proof of the amount of [wrongful death] damages need not be shown with exactness, but the plaintiff must nevertheless provide the factfinder some evidentiary and logical basis for calculating or, at least, rationally estimating a compensatory award.  Sheer conjecture cannot be the basis of a jury finding." *Rodriquez v. United States*, 823 F.2d 735, 747 (3d Cir. 1987)(internal citations an quotations omitted).

Admittedly, Plaintiff's evidence is thin.  But the Court concludes that the interrogatory answer coupled with the TurboTax form, is sufficient evidence from which a jury could "rationally estimat[e] a compensatory award." *Rodriguez*, 823 F.2d at 747.  Accordingly, summary judgment will be denied.

### D.  Survivorship

Atco Raceway argues that it is entitled to summary judgment on the survivorship claim because a reasonable jury could only conclude that Jose Cruz caused the accident, and therefore could not conclude

16

that Atco Raceway was negligent. *See generally*, N.J.S.A. 2A:15-3 ("Executors and administrators may have an action for any trespass done to the person . . . of their testator or intestate against the trespasser, and recover their damages *as their testator or intestate would have had if he was living."*)(emphasis added).

For the reasons articulated in III., B., supra, summary judgment will be denied as to the survivorship claim insofar as it is derivative of the first theory of liability.

### E.  Punitive damages

With respect to punitive damages, the Court previously ruled that even at the early stages of discovery, Plaintiff's evidence could support a finding that "Defendant deliberately ignored New Jersey safety regulations governing drag strips, and knew that failing to follow safety precautions could result in severe injury or death, but allowed Jose Cruz to race anyway." *Estate of Cruz*, 2013 WL 3283964 at *7.

Record facts developed through subsequent discovery only lend further support to the Court's previous conclusion.  The combination of (1) placing the ambulance at the starting line rather than the finish line; (2) using the EMTs to operate the time clock and starting lights; and (3) using an older model ambulance which required the glow plugs to light up could reasonably support a jury finding that Atco Raceway's acts were "'wanton and willful.'"  *Estate*

17

*of Cruz*, 2013 WL 3283964 at *6 (quoting N.J.S.A. 2A:15-5.12, *Smith v Whitaker*, 160 N.J. 221, 242 (1999)).

Summary judgment as to punitive damages will be denied.

**IV.**

In light of the foregoing, Defendant's Motion for Summary Judgment will be granted as to Plaintiff's second and third theories of negligence (failure to inspect Jose Cruz's vehicle and Jose Cruz's expired license).  The Motion will be denied in all other respects.  An appropriate Order accompanies this Opinion.

Date:  July 1, 2015                    ___s/ Joseph E. Irenas_____
                                       JOSEPH E. IRENAS, S.U.S.D.J.